IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AMIT P. CHAUDHARI,<br><br>Defendant. | 4:25CR3071<br><br>**GOVERNMENT'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC #252)** |

COMES NOW Plaintiff, the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to Defendant's Motion to Suppress Evidence Obtained from the Warrantless Search of his Vehicle (Doc. #252).

## I. FACTS

On July 30, 2025, Omaha Police Officers Boyer and Woodard were in a marked police vehicle in the area of South 108th Street and J Street, Omaha, Nebraska. Officers observed a white 2022 Ford F-150 bearing Nebraska license plates YWZ007 traveling northbound on South 108th Street from the J Street intersection. Officers observed the vehicle did not have a front plate.

Officers initiated a traffic stop on the vehicle in the area of I Street and 1-80. Officers made contact with the driver who was identified as Defendant, Amit Prahladbhai Chaudhari, and a front seat passenger who was identified as Eudis Enrique Cuellar-Martinez.[1]

The officers were wearing body-worn camera and their vehicle was also equipped with video recording equipment. The Government intends to officer a copy of Officer Woodard's body worn camera in opposition to Defendant's Motion. The recording begins while the patrol

[1] Cuellar-Martinez is not charged in this case, but was deposed as a material witness.

car is still in motion, with Officer Woodard driving. Officer Woodard puts the patrol car in park at approximately 00:47. The video shows that he approaches the driver's side of the truck and speaks to the driver, Defendant, through an open window. Officer Woodard introduces himself and identifies the reason for the stop. Officer Woodard asks for Defendant's driver's license and vehicle information. Defendant hands the officer his Texas driver's license. Officer Woodard also asks the passenger if he has identification. There is a language barrier as the passenger only speaks Spanish. Officer Boyer, who is standing on the passenger side of the truck, begins speaking with the passenger and at the same time, Defendant tells Officer Woodard that the passenger is working at the hotels. Officer Woodard asks Defendant for the vehicle information. Defendant gets the registration from the center console and provides it to the officer. Officer Woodard asks, "Are there any weapons, drugs, anything illegal in the car?" Defendant smiles and says no. Defendant then says, "We are working at the hotels." The officer asks which hotel he works at and Defendant says, "Victorian Inn." At 2:11 in the recording, Officer Woodard asks, "Would you be willing to let us search the truck?" And Defendant responds without hesitation, "Yeah." Officer Woodard repeats, "Yeah? You'd let us search it?" Defendant responds, "yeah, sure," and starts to take off his seatbelt. The officer radios that there was consent to search and then has Defendant step out. The officer pats Defendant down for weapons, again asking for consent before doing so and getting it, and then asks Defendant to sit on the front of the patrol car. The passenger is also asked out of the truck to wait by Defendant. The officer promptly begins searching the truck and the initial search is completed by time stamp 10:00. At no point in the recording does Defendant revoke consent.

During the consensual search of the truck, Officers located approximately 1.5 grams of Khat—which is a Schedule I controlled substance when fresh and a Schedule IV controlled

substance when dried—in the passenger side door, and approximately $5,000.00 in United States currency in the center console.

When advised that officers had found Khat, Defendant told officers it was Indian Supari, available at an Indian grocery store, and that his friends used it, but he did not. Officers noted the packaging was suspicious and briefly did some research and communicated with other officers about Khat vs. Supari. Defendant and the passenger were then handcuffed. Officers returned to the truck, continued searching, and communicated regarding tow of the vehicle and transport of the suspects.

Officer Woodard then read *Miranda* to Defendant and the passenger. Defendant asked to speak to a lawyer and Officer Woodard immediately ceased speaking with him. At approximately 27:00 into the video, Co-Defendant Rashmi Samani walked up to the scene of the traffic stop stating it was her brother inside the car and inquiring what had occurred. The officer explained that the people in the vehicle were arrested and the vehicle would be towed. After some continued conversation with the officer about the nature of the arrest, Samani told Officer Woodard that she would go back and check surveillance video to prove that someone else did it because her brother had not done anything wrong.

Both Chaudhari and Cuellar-Martinez were transported and booked into Douglas County Corrections for Possession of a Controlled Substance.

## II. PROCEDURAL POSTURE

Defendant appeared pursuant to a Complaint on August 13, 2025. (Doc #38). An Indictment was returned on August 19, 2025. (Doc. #67). A Superseding Indictment was returned on February 18, 2026. (Doc. #181). The Superseding Indictment names Defendant in 20 of 23 Counts, charging Defendant with aiding sex trafficking, maintaining drug premises,

conspiring to commit labor trafficking, conspiring to harbor aliens, harboring aliens, and transporting aliens. Defendant is not charged with possession of a control substance, but the Government asserts that the above-referenced traffic stop is relevant evidence as to Defendant's knowledge and involvement in the crimes contained in the Superseding Indictment.

## III. ARGUMENT

Defendant's Motion fails to raise a contested issue. The Motion notes that the police report indicates the officers received consent to search and asserts that the United States must prove Defendant consented voluntarily. While the Government acknowledges that it bears the burden to prove that consent was given voluntarily, *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968), Defendant has not asserted that it was not. Defendant's Motion never asserts that Defendant did not consent. Defendant's Motion also never asserts that Defendant's consent was involuntary. Instead, Defendant's Motion effectively just says, "prove it."

The voluntariness of consent is a question of fact determined based on the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973). "Consent is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.'" *United States v. Larson*, 978 F.2d 1021, 1023 (8th Cir. 1992) (citing *Bustamonte,* 412 U.S. at 225, 227) (internal citations omitted).

The evidence in this case shows that after approximately one minute of contact with law enforcement, Defendant repeatedly and without reservation stated that officers could search the vehicle he was driving. Defendant was not restrained, pressured, or coerced in any way. Defendant never revoked the consent. Consent to search was voluntarily given.\

**CONCLUSION**

WHEREFORE, the United States respectfully requests that Defendant's Motion to Suppress be denied.

Dated this 8th day of July, 2026.

By: s/ Kelli L. Ceraolo
KELLI L. CERAOLO, #25218
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3084
E-mail: kelli.ceraolo@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.

s/ Kelli L. Ceraolo
Assistant U.S. Attorney